UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| ROBERT S. STACHON and ROBERT L. STACHON, | ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) | |
| v. | ) ) | Cause No. 2:12-cv-440 |
| DOCK W. WOODWARD, JR., YELLOW TRANSPORTATION, AND YRC, INC., | ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the court on the Motion to Exclude Opinions of Plaintiffs' Designated Expert Stephan Neese [DE 75] filed by the defendants, Dock W. Woodward, Jr. and YRC, Inc., on August 11, 2015. For the following reasons, the motion is **GRANTED**.

*Background*

This case arose from a motor vehicle accident that occurred on September 15, 2012. At approximately 1:55 a.m., the defendant, Dock Woodward, Jr., was driving a tractor trailer owned by the defendant, YRC, Inc., on a dark, unlit portion of Highway 41 outside Lowell, Indiana. While driving southbound on Highway 41, Woodward hit a pedestrian, Robert L. Stachon, the plaintiff. Stachon has alleged that Woodward negligently caused his injuries.

Stachon has retained an expert, Stephan Neese, to show that Stachon was walking on the shoulder when the truck struck him. Neese found that the accident occurred 100 to 130 feet north of Stachon's final position. He concluded that Stachon was walking on the shoulder based on the scene measurements, vehicle inspection, medical records, and the pedestrian trajectories. Additionally, Neese relied on an experiment using a toy truck and a wooden doll to calculate

Stachon's vault distance, skid distance, and trajectory. The defendants have argued that the court should exclude Neese's opinions because he used an unreliable methodology and speculated to formulate his opinions.

*Discussion*

The admissibility of expert evidence is governed by Federal Rule of Evidence 702, ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and its progeny. ***Winters v. FruCon Inc.***, 498 F.3d 734, 741 (7th Cir. 2007). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under ***Daubert***, the court exercises a "gatekeeping" function to ensure that expert testimony is both reliable and relevant pursuant to Rule 702. ***Lees v. Carthage Coll.***, 714 F.3d 516, 521 (7th Cir. 2013); ***Winters***, 498 F.3d at 741; ***Kumho Tire Co., Ltd. v. Carmichael***, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). The examination applies "to all kinds of expert testimony." ***U.S. v. Conn***, 297 F.3d 548, 555 (7th Cir. 2002) (noting that Rule 702 makes no distinction between "scientific" knowledge and other forms of specialized knowledge) (citing ***Kumho Tire***, 526 U.S. at 149). The main purpose of the court's gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." ***Kumho Tire***, 526 U.S. at 152.

2

In light of ***Daubert*** and ***Kumho Tire***, the Seventh Circuit has endorsed a two-step analysis for district courts to use in evaluating expert testimony under Rule 702: first, the court must determine whether the expert's testimony is "reliable;" and second, the court must determine whether the expert's testimony is "relevant." ***Lees***, 714 F.3d at 521; ***Hardiman v. Davita Inc.***, 2007 WL 1395568 (N.D. Ind. May 10, 2007). Like all questions of admissibility, those regarding a witness's testimony are matters of law to be determined by the judge. ***Hardiman***, 2007 WL 1395568 at *2 (quoting and citing ***Porter v. Whitehall Labs., Inc.***, 791 F. Supp. 1335, 1342 (S.D. Ind. 1992), *aff'd*, 9 F.3d 607 (7th Cir. 1993). "The burden of showing an expert's testimony to be relevant and reliable is with the proponent of the evidence." ***Bickel v. Pfizer, Inc.***, 431 F. Supp. 2d 918, 921 (N.D. Ind. 2006).

To satisfy the reliability requirement, the expert must be qualified in the relevant field, and his opinion must be based on sound methodology. ***Smith v. Ford Motor Co.***, 215 F.3d 713, 718 (7th Cir. 2000); *see* ***Hardiman***, 2007 WL 1395568 at n.1 (discussing courts' ability to combine the qualifications inquiry into the reliability prong). In determining whether an expert is qualified to render an opinion, the court should consider his "full range of practical experience as well as academic or technical training . . . ." ***U.S. v. Parra***, 402 F.3d 752, 758 (7th Cir. 2005) (quoting ***Smith***, 215 F.3d at 718). Still, "[a] court's reliability analysis does not end with its conclusion that an expert is qualified to testify about a given matter . . . . [T]he court's gatekeeping function [also] focuses on an examination of the expert's methodology." ***Smith***, 215 F.3d at 718. Hence, an expert's work is admissible "only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." ***Lang v. Kohl's Food Stores, Inc.***, 217 F.3d 919, 924 (7th Cir. 2000).

*Daubert* outlined the following factors in assessing an expert's methodology:

> (1) whether a theory or technique . . . can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique or method has met with general acceptance.

*Conn*, 297 F.3d at 555 (quoting *Daubert*, 509 U.S. at 593–94). No matter what type of specialized information is proffered, "the *Daubert* factors set forth above ought not be considered a definitive check list suitable for the evaluation of all kinds of evidentiary submissions involving specialized knowledge." *Conn*, 297 F.3d at 555–56. The list should be flexible "to account for the various types of potentially appropriate expert testimony" rather than definitive or exhaustive. *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003); *see Lees*, 714 F.3d at 521 ("[B]ecause there are 'many different kinds of experts, and many different kinds of expertise,' the reliability analysis should be geared toward the precise sort of testimony at issue and not any fixed evaluative factors.") (citing *Kumho Tire*, 526 U.S. at 150). The court may tailor its approach using the *Daubert* factors as a starting point in an effort to evaluate the particular evidence before it. *Conn*, 297 F.3d at 556.

The expert testimony must "fit the issue to which the expert is testifying." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (internal citations and quotations omitted). Further, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *U.S. v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)). As the Supreme Court wrote: "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146.

Therefore, an expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elec. Corp. v. WH-T Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005); *see Mamah*, 332 F.3d at 478 ("The court is not obligated to admit testimony just because it is given by an expert."). Rather, the Seventh Circuit has reiterated: "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Zenith Elec. Corp.*, 395 F.3d at 419 (collecting cases of reiteration).

Once evidence is deemed reliable, it still must be excluded if it is not relevant, which under Rule 702 means that it is not likely "to assist the trier of fact to understand the evidence or determine a fact in issue . . . ." *U.S. v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). The expert testimony must relate to an issue in the case, or it is not relevant. *Daubert*, 509 U.S. at 591. To "assist" a jury, the Seventh Circuit has explained that the expert testimony will not aid a jury if it "addresses an issue of which the jury is already generally aware, and it will not contribute to their understanding of the particular dispute." *Hall*, 93 F.3d at 1104. Alternatively, if because of the expert's knowledge of relevant facts, the expert's particular use of those facts "will help the trier determine a fact, then the opinion is admissible under Rule 702." *Porter*, 791 F. Supp. at 1343.

First, the defendants have argued that Neese used an unreliable methodology to determine that the accident occurred 100 to 130 feet north of Stachon's final position. Neese relied on the location of one of Stachon's socks to determine where the accident occurred and how far the truck propelled Stachon. After the accident, the Lake County PD found Stachon's socks and flip-flop sandals across the highway. Officers found Stachon's first sock on the fog line separating the right-hand travel lane from the shoulder and approximately 100 feet from Stachon's final position. Officers found his second sock and a sandal in the left-hand travel lane

5

approximately sixty-seven feet south of the fog line sock. They found his second sandal in the right-hand travel lane approximately 125 feet south of the fog line sock and approximately twenty-five feet past Stachon's final position.

Neese concluded that a sock could not travel more than thirty feet after an impact because it is lightweight. Therefore, he found that the accident occurred within thirty feet of the first sock, the fog line sock. Additionally, he determined that the truck propelled Stachon between 100 and 130 feet because Officers found Stachon 100 feet from the fog line sock. Neese relied on accident studies that found that eyeglasses, hats, and shoes could travel up to seventy feet after impact. However, he testified that lightweight objects, like hats or socks, had an upper limit around thirty feet. Therefore, he assumed that the fog line sock travelled thirty feet.

Although Neese relied on the fog line sock's location to determine the impact area, he testified that it was improper to "use shoes and hats and that type of stuff for an impact area." Neese Depo. at 135. In spite of that, Neese relied on the fog line sock's location. Furthermore, he based his conclusion on the assumption that a sock only could travel thirty feet after impact. However, he could not explain how Stachon's second sock travelled sixty-seven feet farther than the fog line sock. Rather, Neese admitted that some forces could have moved the socks after impact and that he did not know where the socks came off Stachon's feet. He speculated that some force either moved the second sock or that it came off Stachon's foot after the fog line sock. Moreover, Neese testified that the impact could have occurred more than thirty feet north of the fog line sock.

Considering the above, Neese did not use a reliable methodology. He relied on the fog line sock's location to determine an impact area, despite testifying that it was improper to rely on similar objects to determine an impact area. Additionally, his conclusion relied on the

assumption that a sock only could travel thirty feet after impact. However, he could not explain how the fog line sock travelled thirty feet, but the other sock travelled an additional sixty-seven feet. Furthermore, he did not know when either sock came off Stachon's foot or whether other forces could have moved the socks after the impact. Therefore, Neese used speculation and assumption, as opposed to data and analysis, to conclude that the impact occurred 100 to 130 feet from Stachon's final position.

Second, the defendants have argued that Neese interpreted Stachon's medical records incorrectly and without any medical expertise. Neese's conclusion that the impact occurred 100 to 130 feet from Stachon's final position placed the impact on the shoulder of the highway. In support of that opinion, Neese reviewed Stachon's medical records and concluded that he did not have road rash. He indicated that the lack of road rash demonstrated that the impact propelled Stachon over the paved asphalt and into the grassy area.

Although Neese interpreted Stachon's medical records to conclude that he did not have road rash, Neese has never received any medical training. Additionally, he has not taken a college or graduate level course in medicine. Moreover, Neese was not a licensed engineer, and admitted that he was not a biomechanical engineering expert. Therefore, he is not qualified to render a medical opinion or to interpret medical records. Even if Neese were qualified to provide a medical opinion or to interpret the medical records, his opinion would contradict Stachon's medical records. Paramedics noted abrasions and lacerations across Stachon's body, and Stachon's treating nurse found road rash lacerations across Stachon's body. Furthermore, doctors at Loyola Hospital and St. Anthony's Hospital found similar abrasions and injuries.

Third, the defendants have argued that Neese used unreliable methodology and speculative assumptions to determine Stachon's vault distance, skid distance, and trajectory. To

7

determine Stachon's vault distance, skid distance, and trajectory, Neese relied on his opinion that the truck propelled Stachon 100 to 130 feet. However, this court has determined that Neese relied improperly on speculation and assumption to determine that the truck propelled Stachon 100 to 130 feet. Therefore, by relying on that opinion, Neese also relied on speculation and assumption to make his vault distance, skid distance, and trajectory opinions.

However, the defendants also identified other errors with Neese's calculations. To determine how far Stachon vaulted in the air and skidded on the ground, Neese needed to determine a vertical launch angle. Neese testified that one must determine the angular relationship between the vehicle and the pedestrian, which requires measuring the angles of the vehicle, to calculate the vertical launch angle. However, Neese never measured the angular dimensions of the YRC truck or an exemplar truck. Rather, Neese simply chose four degrees as the vertical launch angle.

Neese also needed to determine the horizontal launch angle to calculate Stachon's trajectory. However, because he did not measure the angular dimensions of the YRC truck, Neese conducted an accident simulation to determine the horizontal launch angle. Neese used a Toys-R-Us plastic toy truck and an art supply store wooden doll to simulate the accident. Neese rolled the toy truck into the doll and measured the direction the doll moved to determine that Stachon's horizontal launch angle was between five and fourteen degrees.

The defendants have demonstrated numerous flaws with Neese's accident simulation. Because Neese did not measure the YRC truck, he could not replicate it with the toy truck. The toy truck also did not replicate the YRC truck's stiffness properties, force-deflection characteristics, or yield points. Additionally, the weight ratio between the toy truck and the wooden doll was not close to the weight ratio of the YRC truck and Stachon. The wooden doll

did not represent the biomechanical properties of a human, was not biofidelic, and was not validated to respond to trauma like a human. Furthermore, if the toy truck and wooden doll were scaled to the YRC truck and Stachon, the doll would replicate a 6'9"[1] male and would have thrown Stachon sixty times farther than the actual accident.

Considering the above, Neese did not use reliable methodology to determine Stachon's vault distance, skid distance, and trajectory. First, Neese relied on his 100 to 130 foot throw distance, which he based on speculation and assumptions. Second, he simply chose a vertical launch angle without measuring the YRC truck or an exemplar truck. Third, his accident simulation failed to account for numerous differences between the actual accident and his simulation.

In response, Stachon failed to show that Neese used a reliable methodology for his opinions. He failed to respond substantively to any of the defendants' arguments. Additionally, he did not indicate whether Neese's methods could be tested, were subjected to peer review, had a known or potential rate of error, were subject to standards, or were accepted generally. Rather, he indicated that Neese's throw range was similar to the defendants' experts, and that Neese's report stated that he gave his opinions with a reasonable degree of scientific certainty.

Although Neese's throw range overlapped partially with one of the defendants' experts[2], that does not demonstrate that Neese used a reliable methodology to reach his conclusion. Stachon had the burden to demonstrate the reliability of Neese's methodology, but he failed to respond to the defendants' arguments. *See **Bickel***, 431 F. Supp. 2d at 921 ("The burden of showing an expert's testimony to be relevant and reliable is with the proponent of the

---

[1]   Stachon is 5'9" tall.

[2]   The defendants' experts, Michael Sutton and Dr. Alfred Bowles, found ranges of 135 to 155 feet and 120 to 225 feet respectively. Therefore, Neese's range overlapped with Bowles's range by ten feet.

9

evidence."). Additionally, Neese's confirmation that he gave his opinions to a reasonable degree of scientific certainty is insufficient. *See **Gen. Elec.***, 522 U.S. at 146 ("[N]othing in either ***Daubert*** or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Therefore, Stachon has not met his burden to establish the reliability of Neese's opinions, which requires exclusion.

Based on the foregoing reasons, the Motion to Exclude Opinions of Plaintiffs' Designated Expert Stephan Neese [DE 75] is **GRANTED**.

ENTERED this 28th day of September, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge