UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROBERT S. STACHON and ROBERT L. STACHON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Cause No. 2:12-cv-440 ) |
| DOCK W. WOODWARD, JR., YELLOW TRANSPORTATION, AND YRC, INC., | ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion to Exclude Opinions of Defendants' Designated Expert Rudolph G. Mortimer [DE 66] filed by the plaintiff, Robert L. Stachon, on August 10, 2015. For the following reasons, the motion is **DENIED**.

*Background*

This case arose from a motor vehicle accident that occurred on September 15, 2012. At approximately 1:55 a.m., the defendant, Dock Woodward, Jr., was driving a tractor trailer owned by the defendant, YRC, Inc., on a dark, unlit portion of Highway 41 outside Lowell, Indiana. While driving southbound on Highway 41, Woodward hit a pedestrian, Robert L. Stachon, the plaintiff. Stachon has alleged that Woodward negligently caused his injuries.

The defendants have retained an expert, Dr. Rudolf G. Mortimer, to rebut Stachon's expert, Stuart Nightenhelser, and to show that Woodward did not have time to avoid the accident. Mortimer concluded that Woodward could have detected an object in the roadway between 223 and 275 feet away. However, he also found that Woodward likely did not recognize Stachon as a pedestrian until he was closer because of the perceptual disconnect

between the upper and lower portions of Stachon's clothing. Considering this accident's conditions, Mortimer determined that Woodward acted appropriately and that Woodward was very alert. Stachon has argued that Mortimer was not qualified as an expert, that he based his opinions on unreliable methodology, and that his testimony was not relevant.

*Discussion*

The admissibility of expert evidence is governed by Federal Rule of Evidence 702, **Daubert v. Merrell Dow Pharms., Inc.**, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and its progeny. **Winters v. FruCon Inc.**, 498 F.3d 734, 741 (7th Cir. 2007). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under **Daubert**, the court exercises a "gatekeeping" function to ensure that expert testimony is both reliable and relevant pursuant to Rule 702. **Lees v. Carthage Coll.**, 714 F.3d 516, 521 (7th Cir. 2013); **Winters**, 498 F.3d at 741; **Kumho Tire Co., Ltd. v. Carmichael**, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). The examination applies "to all kinds of expert testimony." **U.S. v. Conn**, 297 F.3d 548, 555 (7th Cir. 2002) (noting that Rule 702 makes no distinction between "scientific" knowledge and other forms of specialized knowledge) (citing **Kumho Tire**, 526 U.S. at 149). The main purpose of the court's gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." **Kumho Tire**, 526 U.S. at 152.

In light of ***Daubert*** and ***Kumho Tire***, the Seventh Circuit has endorsed a two-step analysis for district courts to use in evaluating expert testimony under Rule 702: first, the court must determine whether the expert's testimony is "reliable;" and second, the court must determine whether the expert's testimony is "relevant." ***Lees***, 714 F.3d at 521; ***Hardiman v. Davita Inc.***, 2007 WL 1395568 (N.D. Ind. May 10, 2007). Like all questions of admissibility, those regarding a witness's testimony are matters of law to be determined by the judge. ***Hardiman***, 2007 WL 1395568 at *2 (quoting and citing ***Porter v. Whitehall Labs., Inc.***, 791 F. Supp. 1335, 1342 (S.D. Ind. 1992), *aff'd*, 9 F.3d 607 (7th Cir. 1993). "The burden of showing an expert's testimony to be relevant and reliable is with the proponent of the evidence." ***Bickel v. Pfizer, Inc.***, 431 F. Supp. 2d 918, 921 (N.D. Ind. 2006).

To satisfy the reliability requirement, the expert must be qualified in the relevant field, and his opinion must be based on sound methodology. ***Smith v. Ford Motor Co.***, 215 F.3d 713, 718 (7th Cir. 2000); *see* ***Hardiman***, 2007 WL 1395568 at n.1 (discussing the courts' ability to combine the qualifications inquiry into the reliability prong). In determining whether an expert is qualified to render an opinion, the court should consider his "full range of practical experience as well as academic or technical training . . . ." ***U.S. v. Parra***, 402 F.3d 752, 758 (7th Cir. 2005) (quoting ***Smith***, 215 F.3d at 718). Still, "[a] court's reliability analysis does not end with its conclusion that an expert is qualified to testify about a given matter . . . . [T]he court's gatekeeping function [also] focuses on an examination of the expert's methodology." ***Smith***, 215 F.3d at 718. Hence, an expert's work is admissible "only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." ***Lang v. Kohl's Food Stores, Inc.***, 217 F.3d 919, 924 (7th Cir. 2000).

*Daubert* outlined the following factors in assessing an expert's methodology:

> (1) whether a theory or technique . . . can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique or method has met with general acceptance.

*Conn*, 297 F.3d at 555 (quoting *Daubert*, 509 U.S. at 593–94). No matter what type of specialized information is proffered, "the *Daubert* factors set forth above ought not be considered a definitive check list suitable for the evaluation of all kinds of evidentiary submissions involving specialized knowledge." *Conn*, 297 F.3d at 555–56. The list should be flexible "to account for the various types of potentially appropriate expert testimony" rather than definitive or exhaustive. *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003); *see Lees*, 714 F.3d at 521 ("[B]ecause there are 'many different kinds of experts, and many different kinds of expertise,' the reliability analysis should be geared toward the precise sort of testimony at issue and not any fixed evaluative factors.") (citing *Kumho Tire*, 526 U.S. at 150). The court may tailor its approach using the *Daubert* factors as a starting point in an effort to evaluate the particular evidence before it. *Conn*, 297 F.3d at 556.

The expert testimony must "fit the issue to which the expert is testifying." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (internal citations and quotations omitted). Further, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *U.S. v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)). As the Supreme Court noted: "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146.

Therefore, an expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elec. Corp. v. WH-T Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005); *see Mamah*, 332 F.3d at 478 ("The court is not obligated to admit testimony just because it is given by an expert."). Rather, the Seventh Circuit has reiterated: "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Zenith Elec. Corp.*, 395 F.3d at 419 (collecting cases of reiteration).

Once evidence is deemed reliable, it still must be excluded if it is not relevant, which under Rule 702 means that it is not likely "to assist the trier of fact to understand the evidence or determine a fact in issue . . . ." *U.S. v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). The expert testimony must relate to an issue in the case, or it is not relevant. *Daubert*, 509 U.S. at 591. To "assist" a jury, the Seventh Circuit has explained that the expert testimony will not aid a jury if it "addresses an issue of which the jury is already generally aware, and it will not contribute to their understanding of the particular dispute." *Hall*, 93 F.3d at 1104. Alternatively, if, because of the expert's knowledge of relevant facts, the expert's particular use of those facts "will help the trier determine a fact, then the opinion is admissible under Rule 702." *Porter*, 791 F. Supp. at 1343.

First, Stachon has argued that Mortimer was not qualified in the fields of human factors engineering or lighting and illumination. Although Stachon has failed to explain his argument, he claimed that Mortimer was not qualified in the field of human factor engineering because Mortimer was a psychologist only and not an engineer, medical doctor, or an accident reconstructionist. Additionally, Stachon has commented that Mortimer was not certified in ergonomics. Stachon has stated that Mortimer admitted he was not an expert in lighting or illumination because he listed it as a field of major interest on his C.V. Stachon also has

5

challenged Mortimer's membership in the Human Factors & Ergonomics Society (HFES) because anyone could join by completing an online membership and paying a fee.

Although Stachon has questioned Mortimer's qualifications, the court finds Mortimer qualified in the field of human factors engineering. Mortimer has a Ph.D. in Industrial and Experimental Psychology and has practiced in the field of human factors for nearly fifty years. He has presented or published over 250 papers, reports, books, and articles on human factors engineering. Despite Stachon's claim otherwise, Mortimer was certified in Ergonomics as a Human Factors Professional by the Board of Certification in Professional Ergonomics. Mortimer has made presentations numerous times to research boards, safety boards, and professional societies on human factors issues. Furthermore, he has served as a peer reviewer for several scientific journals and received an award from the HFES. The defendants agreed that anyone could join HFES as an affiliate but noted that HFES has competence and experience requirements for members. They indicated that Mortimer not only was a member but also a fellow, which required loftier credentials and was limited to the most distinguished members of HFES.

The defendants further indicated that Mortimer never admitted he was not an expert in lighting or illumination. Rather, they stated that Mortimer conducted many years of vehicle lighting system research at the University of Michigan, University of Illinois, and the General Motors Corporation. Some of his research focused on improving nighttime driving visibility for motorists. Additionally, Mortimer has published approximately sixty-eight publications on vehicle lighting or illumination.

The defendants have demonstrated that Mortimer is qualified in the fields of human factors engineering and lighting and illumination. He has a Ph.D. in Industrial and Experiment

Psychology and has nearly fifty years of practical experience in human factors engineering. Additionally, Mortimer has written extensively on human factors engineering, lighting, and illumination. Furthermore, he has peer reviewed multiple scientific journals and been recognized as a leader in human factors engineering.

Second, Stachon has argued that Mortimer did not use reliable methodology to reach his conclusions. Stachon has indicated that Mortimer did not visit the accident scene or conduct any tests or experiments. Rather, he has claimed that Mortimer reviewed materials only. However, Stachon did not provide any specific errors with Mortimer's methodology or indicate any specific opinions that the court should exclude.

Mortimer has offered three general conclusions regarding Woodward's ability to detect Stachon, the appropriateness of Woodward's actions, and the flawed methods of Nightenhelser's experiment. To determine when Woodward could detect Stachon, Mortimer conducted a computer simulation based on the reflectance values of Stachon's clothing and skin. The computer simulation allowed him to predict an object's detectability distance under various lighting conditions. The simulation has been tested, peer reviewed, and accepted generally in the field of human factors. Additionally, the simulation was known to produce reliable results.

Using the simulation, Mortimer concluded that Woodward could detect Stachon's clothing and body at the following distances: socks: 231' to 267', legs: 223' to 275', shorts: 85' to 91', and shirt: 175' to 217'. He also found a perceptual disconnect between Stachon's lower and upper body because of Stachon's dark shorts. The perceptual disconnect made it more difficult for Woodward to recognize Stachon as a pedestrian. Therefore, Woodward would not have recognized Stachon until he was closer, despite being able to detect an object in the roadway between 223' and 275' feet away.

7

The court finds that Mortimer's methodology to determine when Woodward could detect Stachon reliable. His computer simulation methodology has been accepted generally within the human factors field, has been tested and peer reviewed, and was viewed as reliable. Additionally, he has cited numerous articles that support his methodology. Although Mortimer did not visit the accident scene, he has relied on the measurements from the scene, photographs, and Stachon's skin and clothing reflectance values.

Stachon has argued that Mortimer's methodology was unreliable because his computer simulation analyzed Woodward's visibility with low beam headlight illumination only. The defendants have indicated that Mortimer wrote his report in rebuttal to Nightenhelser's report, which did not analyze high beam headlight illumination. Therefore, Mortimer did not analyze high beam headlight illumination either. Additionally, they have indicated that Woodward did not remember whether he was using high beam headlights. Although Mortimer did not analyze Woodward's visibility with high beam headlights, the defendants have shown that his methodology analyzed the low beam headlight visibility reliably. Therefore, any missing analysis regarding high beam headlights does not warrant exclusion. Rather, Stachon may question Mortimer about high beam headlight visibility on cross-examination.

Next, Mortimer concluded that Woodward acted appropriately under the circumstances. To reach that conclusion, Mortimer applied peer reviewed research regarding driver reaction times and driver expectancy. Mortimer cited several treatises that established the scientific principles he used. Research has shown that it took more time for a driver to recognize an unexpected, hazardous object at night, similar to Stachon in the roadway. Additionally, the unexpected object might cause stress that could further delay a driver's response. A driver's

reaction time to an unexpected, stressful event might exceed three to five seconds even when the driver knew it was a test.

Mortimer determined that Woodward did not have time to avoid the collision. Mortimer indicated that Woodward had approximately 4.5 seconds to avoid the accident if he detected Stachon from 400 feet.[1] Considering the above peer reviewed research, Mortimer concluded that Woodward could not avoid the accident. Mortimer also found that Woodward was very alert because he swerved approximately one second before impact.

The defendants have demonstrated that Mortimer used a reliable methodology to conclude that Woodward did not have time to avoid the accident. Mortimer relied on peer reviewed research regarding driver reaction times and driver expectancy. Stachon has argued that Mortimer erred because he relied on his own publications. Although Mortimer relied partially on publications he authored or co-authored, Stachon has not contested the validity of any of Mortimer's cited references. Furthermore, the defendants have established Mortimer's expertise in this area.

Mortimer also concluded that Nightenhelser's visibility experiment was flawed. Mortimer used an iso-candela diagram to make illumination measurements from the same distances as Nightenhelser. The diagram corresponded with Nightenhelser's experiment, which placed an exemplar truck and a dummy in the field. Mortimer has claimed that his method eliminated variables that Nightenhelser did not or could not account for in the field. He also has claimed that the iso-candela diagram was the most reliable method to measure illumination and that the human factors field has accepted the iso-candela diagram to make illumination measurements.

---

[1] Woodward testified that he was travelling 60 mph, which equaled 88 feet per second. Therefore, it took Woodward 4.55 seconds to travel 400 feet.

Stachon has not argued that Mortimer's methodology to rebut Nightenhelser's findings was unreliable. Rather, he has claimed that Mortimer's findings would not assist the jury because they criticize Nightenhelser's opinion. He has stated that the defendants should attack Nightenhelser's opinion through cross-examination and not through Mortimer's opinions. However, **Federal Rule of Civil Procedure 26** allows parties to use expert testimony to contradict or rebut evidence on the same subject matter. *See* **Federal Rule of Civil Procedure 26(a)(2)(D)(ii)**. Therefore, that is not a reason to exclude Mortimer's testimony.

Rather, Mortimer has presented relevant testimony that will assist the jury. The testimony will help the jury determine when Woodward could detect Stachon in the roadway and whether Woodward had enough time to avoid the accident. Additionally, Mortimer can explain driver response time and how certain factors, such as expectancy and stress, may alter response time. Furthermore, his testimony will address issues outside of the jury's general awareness.

Based on the foregoing reasons, the Motion to Exclude Opinions of Defendants' Designated Expert Rudolph G. Mortimer [DE 66] is **DENIED**.

ENTERED this 16th day of October, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge