UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROBERT S. STACHON and ROBERT L. STACHON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Cause No. 2:12-cv-440 ) |
| DOCK W. WOODWARD, JR., YELLOW TRANSPORTATION, AND YRC, INC., | ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion to Exclude Opinions of Defendants' Designated Expert Michael Sutton [DE 68] filed by the plaintiff, Robert L. Stachon, on August 10, 2015. For the following reasons, the motion is **DENIED**.

*Background*

This case arose from a motor vehicle accident that occurred on September 15, 2012. At approximately 1:55 a.m., the defendant, Dock Woodward, Jr., was driving a tractor trailer owned by the defendant, YRC, Inc., on a dark, unlit portion of Highway 41 outside Lowell, Indiana. While driving southbound on Highway 41, Woodward hit a pedestrian, Robert L. Stachon, the plaintiff. Stachon has alleged that Woodward negligently caused his injuries.

The defendants have retained Michael Sutton, an accident reconstructionist, to show that the accident occurred in the right travel lane. Sutton concluded that the impact occurred 135 to 155 feet north of Stachon's final position and at least 6.5 feet into the right travel lane. He also determined that Woodward swerved left at least one second before impact in an attempt to avoid

the accident. Stachon has argued that the court should exclude Sutton's opinions because they embraced subjects outside his expertise, they were unreliable, and they would not assist the jury.

*Discussion*

The admissibility of expert evidence is governed by Federal Rule of Evidence 702, ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and its progeny. ***Winters v. FruCon Inc.***, 498 F.3d 734, 741 (7th Cir. 2007). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under ***Daubert***, the court exercises a "gatekeeping" function to ensure that expert testimony is both reliable and relevant pursuant to Rule 702. ***Lees v. Carthage Coll.***, 714 F.3d 516, 521 (7th Cir. 2013); ***Winters***, 498 F.3d at 741; ***Kumho Tire Co., Ltd. v. Carmichael***, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). The examination applies "to all kinds of expert testimony." ***U.S. v. Conn***, 297 F.3d 548, 555 (7th Cir. 2002) (noting that Rule 702 makes no distinction between "scientific" knowledge and other forms of specialized knowledge) (citing ***Kumho Tire***, 526 U.S. at 149). The main purpose of the court's gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." ***Kumho Tire***, 526 U.S. at 152.

In light of ***Daubert*** and ***Kumho Tire***, the Seventh Circuit has endorsed a two-step analysis for district courts to use in evaluating expert testimony under Rule 702: first, the court

must determine whether the expert's testimony is "reliable;" and second, the court must determine whether the expert's testimony is "relevant." *Lees*, 714 F.3d at 521; ***Hardiman v. Davita Inc.***, 2007 WL 1395568 (N.D. Ind. May 10, 2007). Like all questions of admissibility, those regarding a witness's testimony are matters of law to be determined by the judge. ***Hardiman***, 2007 WL 1395568 at *2 (quoting and citing ***Porter v. Whitehall Labs., Inc.***, 791 F. Supp. 1335, 1342 (S.D. Ind. 1992), *aff'd*, 9 F.3d 607 (7th Cir. 1993). "The burden of showing an expert's testimony to be relevant and reliable is with the proponent of the evidence." ***Bickel v. Pfizer, Inc.***, 431 F. Supp. 2d 918, 921 (N.D. Ind. 2006).

To satisfy the reliability requirement, the expert must be qualified in the relevant field, and his opinion must be based on sound methodology. ***Smith v. Ford Motor Co.***, 215 F.3d 713, 718 (7th Cir. 2000); *see* ***Hardiman***, 2007 WL 1395568 at n.1 (discussing courts' ability to combine the qualifications inquiry into the reliability prong). In determining whether an expert is qualified to render an opinion, the court should consider his "full range of practical experience as well as academic or technical training . . . ." ***U.S. v. Parra***, 402 F.3d 752, 758 (7th Cir. 2005) (quoting ***Smith***, 215 F.3d at 718). Still, "[a] court's reliability analysis does not end with its conclusion that an expert is qualified to testify about a given matter . . . . [T]he court's gatekeeping function [also] focuses on an examination of the expert's methodology." ***Smith***, 215 F.3d at 718. Hence, an expert's work is admissible "only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." ***Lang v. Kohl's Food Stores, Inc.***, 217 F.3d 919, 924 (7th Cir. 2000).

*Daubert* outlined the following factors in assessing an expert's methodology:

>(1) whether a theory or technique . . . can be (and has been) tested;
>(2) whether the theory or technique has been subjected to peer

3

> review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique or method has met with general acceptance.

*Conn*, 297 F.3d at 555 (quoting *Daubert*, 509 U.S. at 593–94). No matter what type of specialized information is proffered, "the *Daubert* factors set forth above ought not be considered a definitive check list suitable for the evaluation of all kinds of evidentiary submissions involving specialized knowledge." *Conn*, 297 F.3d at 555–56. The list should be flexible "to account for the various types of potentially appropriate expert testimony" rather than definitive or exhaustive. *Deputly v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003); *see Lees*, 714 F.3d at 521 ("[B]ecause there are 'many different kinds of experts, and many different kinds of expertise,' the reliability analysis should be geared toward the precise sort of testimony at issue and not any fixed evaluative factors.") (citing *Kumho Tire*, 526 U.S. at 150). The court may tailor its approach using the *Daubert* factors as a starting point in an effort to evaluate the particular evidence before it. *Conn*, 297 F.3d at 556.

The expert testimony must "fit the issue to which the expert is testifying." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (internal citations and quotations omitted). Further, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *U.S. v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)). As the Supreme Court wrote: "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146. Therefore, an expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elec. Corp. v. WH-T Broad.*

*Corp.*, 395 F.3d 416, 419 (7th Cir. 2005); *see Mamah*, 332 F.3d at 478 ("The court is not obligated to admit testimony just because it is given by an expert."). Rather, the Seventh Circuit has reiterated: "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." **Zenith Elec. Corp.**, 395 F.3d at 419 (collecting cases of reiteration).

Once evidence is deemed reliable, it still must be excluded if it is not relevant, which under Rule 702 means that it is not likely "to assist the trier of fact to understand the evidence or determine a fact in issue . . . ." **U.S. v. Hall**, 93 F.3d 1337, 1342 (7th Cir. 1996). The expert testimony must relate to an issue in the case, or it is not relevant. **Daubert**, 509 U.S. at 591. To "assist" a jury, the Seventh Circuit has explained that the expert testimony will not aid a jury if it "addresses an issue of which the jury is already generally aware, and it will not contribute to their understanding of the particular dispute." **Hall**, 93 F.3d at 1104. Alternatively, if, because of the expert's knowledge of relevant facts, the expert's particular use of those facts "will help the trier determine a fact, then the opinion is admissible under Rule 702." **Porter**, 791 F. Supp. at 1343.

Stachon has not argued that Sutton was unqualified to offer expert testimony as an accident reconstructionist. He has claimed that Sutton's opinions embraced subjects outside his expertise, including biomechanics, biomedicine, illumination, and lighting. Stachon did not explain his argument or identify any specific opinions that were outside Sutton's expertise. Therefore, Stachon waived that argument. *See* **Hernandez v. Cook Cnty. Sheriff's Office**, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that "skeletal" arguments may be properly treated as waived . . . ."); *see also* **Bratton v. Roadway Package Sys., Inc.**, 77 F.3d 168, n.1 (7th Cir. 1996) (holding that a party waives its argument when it fails to develop the argument in any meaningful way).

5

The defendants have established that Sutton was qualified as an accident reconstructionist. Sutton has a Bachelor's degree in Mechanical Engineering and a Master's degree in Engineering with concentrations in mechanical engineering-dynamics and vibrations and acoustics. He has over twenty-five years of experience as an accident reconstructionist and has been licensed as a professional engineer in three states. Additionally, Sutton has testified as an expert in multiple areas, including accident reconstruction and failure analysis. Sutton may not offer opinions outside his expertise, but he is qualified to testify as an accident reconstructionist.

Stachon also has argued that Sutton's methodology was unreliable. Sutton relied on physical evidence from the scene and a computer simulation to formulate his opinions. To determine that Woodward swerved left to avoid Stachon, Sutton found a fresh tire mark at the scene of the accident. The tire mark began in the middle of the right travel lane and curved toward the left travel lane. Based on his experience and peer reviewed research, Sutton concluded that Woodward's outside tires made the mark as the truck swerved to the left.

Sutton indicated that a fully loaded tractor trailer, such as Woodward's truck, would shift weight onto the outside tires and cause a mark as the truck swerved. He stated that a swerve mark often occurred during aggressive evasive maneuvers. Sutton also found fresh gouge marks in the right travel lane corresponding with the alignment of the tire mark. The gouge marks were aligned with the direction that the truck projected Stachon upon impact. Because the gouge marks corresponded with the tire mark, Sutton confirmed that the right side tires caused the tire mark as Woodward swerved left.

Sutton also concluded that the impact occurred at least 6.5 feet from the fog line. He based that determination on the location of the gouge marks. He stated that the impact caused

6

debris, such as the truck's headlight assembly, to plunge into the pavement creating the gouge marks. Sutton did not find any other fresh gouge marks near the accident scene. Therefore, he relied on the gouge marks' location to find that Stachon was at least 6.5 feet into the right travel lane at impact.

Additionally, Sutton relied on PC-Crash, a computer simulation program, to find that Woodward swerved at least one second before impact. Sutton inputted information from the accident, such as the truck's speed and location, to simulate the accident based on the laws of physics and accepted accident reconstruction principles. PC-Crash's simulation results have been validated and accepted generally in the accident reconstruction field. To conduct the simulation, Sutton matched the motion of the truck to the tire mark found at the scene. The simulation demonstrated that the swerve had to occur for ninety feet to match the tire mark. Therefore, Sutton concluded that Woodward swerved at least one second before impact because Woodward was travelling 60 mph or 88 feet per second.

Sutton also determined that the truck projected Stachon 135 to 155 feet after impact. He used the physical evidence at the scene, the truck's speed and location, and the truck's front contour to calculate Stachon's trajectory and throw distance. Based on that evidence, Sutton used peer reviewed and validated pedestrian reconstruction equations. He indicated that the equations were accepted generally in the accident reconstruction field.

The defendants have demonstrated that Sutton's methodology was reliable. Sutton relied on the physical evidence from the scene, including a tire mark and gouge marks, to determine how Woodward swerved and where the impact occurred. He interpreted the physical evidence through peer reviewed research on tire markings. Additionally, he inputted the physical evidence, along with uncontested information about the truck's speed, to conduct a computer

simulation. Moreover, he used software that has been validated and accepted generally in the accident reconstruction field. Sutton's simulation and calculations relied on the laws of physics and accepted accident reconstruction principles.

Stachon has argued that Sutton erred by relying on Woodward's version of events. However, as discussed above, Sutton relied on the physical evidence at the scene, such as the tire mark and gouge marks, and a computer simulation to formulate his opinions. Stachon has claimed that Sutton concluded that Woodward could see Stachon at greater than 400 feet, despite a lack of expertise in lighting and illumination. The defendants have presented an affidavit from Sutton that indicated he did not hold that opinion. Rather, the defendants have stated that Stachon has misrepresented Sutton's deposition testimony. As stated earlier, Sutton may not offer expert testimony outside of his expertise. However, Sutton did not rely on Woodward's visibility to reconstruct the accident. Therefore, any opinion on visibility was irrelevant to whether Sutton's methodology was reliable.

Stachon has claimed that Sutton failed to account for any variance in the truck's speedometer in calculating the truck's stopping distance. In his deposition, Sutton admitted that a speedometer's calibration could vary by plus or minus two percent. The YRC truck's speedometer ranged from 0 to 85 mph, which amounted to a possible variance of 1.7 mph. Therefore, Woodward's uncontested speed of 60 mph may have varied from 58.3 to 61.7 mph. However, there was no evidence that the YRC truck's speedometer was calibrated improperly. Furthermore, Sutton did not rely on Woodward's stopping distance to formulate his opinions because he concluded that Woodward swerved to avoid the accident. Therefore, it is not clear why Stachon has raised this argument, particularly because he failed to develop the argument.

8

Stachon has argued that Sutton failed to download data from the truck's electronic control module. However, as Sutton explained in his deposition, the ECM data from a 2007 Volvo tractor does not contain any relevant data to accident reconstruction. Additionally, the defendants have presented a letter from Volvo indicating that their ECM does not download information relating to vehicle speed, braking events, or other information helpful for accident reconstructions. After Sutton's deposition, he reviewed the ECM data and confirmed that it did not aid his investigation. Thus, this issue does not demonstrate that Sutton's methodology was unreliable.

Stachon has claimed that Sutton's opinions were moot because the court could take judicial notice of Indiana's CDL manual. He argued that the manual would demonstrate that Woodward failed to maintain a proper lookout, so Sutton's opinions were unnecessary. Stachon has not indicated how the CDL manual would render Sutton's interpretation of the physical evidence moot. Nor has he stated why a CDL manual renders Sutton's methodology unreliable under *Daubert*.

Stachon further has argued that Sutton relied on a colleague, Aaron Kiefer, to formulate his opinions. Sutton testified that Kiefer performed the computer simulation in this case. Sutton also testified that Kiefer worked under his supervision. Additionally, he testified that Kiefer was a professional engineer with a Master's degree in mechanical engineering and extensive accident reconstruction experience. Stachon has not indicated why Sutton's reliance on one of his employees was an error or why it rendered his methodology unreliable. Rather, "[a]n expert witness is permitted to use assistants in formulating his expert opinion, and normally they need not themselves testify." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002). Additionally, Rule 703 allows experts to rely "on facts or data in the case that the expert

9

has been made aware of or personally observed." **Federal Rule of Evidence 703**. Therefore, this does not warrant exclusion.

Stachon also has indicated that other courts have barred Sutton's testimony previously. He has not demonstrated how Sutton's past work rendered his present opinions unreliable. However, the defendants indicated that the courts did not bar Sutton's opinions because his methodology was unreliable. In *Catalano v. Tricam*, Sutton relied on a metallurgist expert, whose opinions were excluded. 2013 WL 81364, at *5 (W.D.N.C. Jan. 7, 2013). Therefore, the court also excluded Sutton's opinions, which would not assist the jury without the metallurgist's opinions. *Catalano*, 2013 WL 81364 at *5. In *Eck v. Yellow Transp., Inc.*, the court allowed Sutton's accident reconstruction opinions but precluded his opinion that the accident was consistent with a driver suffering a medical emergency. 2006 WL 5116703, at *1 (E.D. Pa. Oct. 16, 2006). Neither of those opinions affects this case nor demonstrates that this court should exclude Sutton's opinions.

Stachon has argued that Sutton failed to duplicate the collision. However, Sutton performed a computer simulation of the accident with reliable methodology based on accepted scientific principles. Therefore, Sutton did not need to duplicate the collision to formulate his opinions reliably. Stachon has claimed that Sutton admitted that another truck could have made the tire mark. Stachon has misrepresented Sutton's testimony. Sutton stated, "it's possible that mark could be from another truck, but I don't think that there's any evidence that it is. And certainly all of the evidence . . . pass[es] the threshold of reliability for accident reconstruction." Sutton Deposition at 133. That statement does not warrant exclusion.

Stachon has claimed that Sutton erred because he ignored Woodward's testimony that Stachon was 6.5 feet into a 6 foot travel lane. Stachon has argued that Sutton ignored that

10

testimony because it demonstrated that Stachon was across the center line and out of Woodward's travel lane. Sutton has indicated that he ignored Woodward's testimony because he measured the travel lane at 10'10". Furthermore, he has indicated that Woodward had to be incorrect because the truck was 8 feet wide. It is unclear why Sutton should have relied on this testimony, considering that would make the travel lane narrower than Woodward's truck.

Last, Stachon has argued that Sutton's testimony was unreliable because the defendants' other expert, Dr. Alfred Bowles, determined a wider throw range than Sutton. Stachon has not indicated how Dr. Bowles range rendered Sutton's methodology unreliable. The defendants stated that Sutton relied on the physical evidence at the scene while Bowles determined the throw range that was theoretically possible. They also indicated that Bowles narrowed his range considerably based on the physical evidence. Considering that Sutton and Bowles analyzed different information with a different goal, this does not warrant exclusion. Furthermore, this argument does not indicate anything specifically about Sutton's methodology.

Stachon also has argued that Sutton's testimony would not assist the jury because the jury could understand the evidence without his testimony. The court disagrees. Sutton's testimony is relevant and can assist the jury. Sutton's testimony would help the jury interpret the physical evidence at the scene, particularly the tire mark and the gouge marks. The jury would not know whether the marks were from braking or an evasive maneuver. Additionally, his testimony would help the jury determine where the accident occurred.

Based on the foregoing reasons, the Motion to Exclude Opinions of Defendants' Designated Expert Michael Sutton [DE 68] is **DENIED**.

ENTERED this 23rd day of October, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge